**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**EASTERN DIVISION**

**ANN MARIE SHAW,**

**Plaintiff,**

**v.**

**CAROLYN W. COLVIN, Acting Commissioner of Social Security,**

**Defendant.**

**Case No. EDCV 14-00851 AJW**

**MEMORANDUM OF DECISION**

Plaintiff filed this action seeking reversal of the decision of the defendant, the Commissioner of the Social Security Administration (the "Commissioner"), denying plaintiff's application for social security disability insurance and supplemental security income ("SSI") benefits. The parties have filed a Joint Stipulation ("JS") setting forth their contentions with respect to each disputed issue.

**Administrative Proceedings**

The procedural facts are summarized in the Joint Stipulation. [See JS 2-4]. In a January 7, 2013 written hearing decision that constitutes the Commissioner's final decision in this matter, the ALJ found that plaintiff retained the residual functional capacity ("RFC") to perform a restricted range of sedentary work. The ALJ determined that plaintiff could not perform her past relevant work, but that she could perform alternative jobs existing in significant numbers in the national economy prior to January 16, 2013, when her age category changed from that of a "younger individual" to that of an "individual closely approaching

advanced age." The ALJ found that as of January 16, 2013, plaintiff could not perform such alternative jobs. Accordingly, the ALJ concluded that plaintiff was not disabled prior to January 16, 2013, and that she was disabled beginning on January 16, 2013 and remained disabled through the date of his decision. [Administrative Record ("AR") 10-18].

**Standard of Review**

The Commissioner's denial of benefits should be disturbed only if it is not supported by substantial evidence or is based on legal error. Stout v. Comm'r, Soc. Sec. Admin., 454 F.3d 1050, 1054 (9th Cir. 2006); Thomas v. Barnhart, 278 F.3d 947, 954 (9th Cir. 2002). "Substantial evidence" means "more than a mere scintilla, but less than a preponderance." Bayliss v. Barnhart, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005). "It is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Burch v. Barnhart, 400 F.3d 676, 679 (9th Cir. 2005) (internal quotation marks omitted). The court is required to review the record as a whole and to consider evidence detracting from the decision as well as evidence supporting the decision. Robbins v. Soc. Sec. Admin, 466 F.3d 880, 882 (9th Cir. 2006); Verduzco v. Apfel, 188 F.3d 1087, 1089 (9th Cir. 1999). "Where the evidence is susceptible to more than one rational interpretation, one of which supports the ALJ's decision, the ALJ's conclusion must be upheld." Thomas, 278 F.3d at 954 (citing Morgan v. Comm'r of Soc. Sec. Admin., 169 F.3d 595, 599 (9th Cir. 1999)).

**Discussion**

**Listing of impairments**

Plaintiff contends that the ALJ erred in finding that her impairments did not equal section 4.04(C) of the Listing of Impairments, 20 C.F.R. Pt. 404, Subpt. P, App. 1 (the "listing").

To "meet" a listed impairment, a disability claimant must establish that his condition satisfies each element of the listed impairment in question. See Sullivan v. Zebley, 493 U.S. 521, 530 (1990); Tackett v. Apfel, 180 F.3d 1094, 1099 (9th Cir. 1999). To "equal" a listed impairment, a claimant "must establish symptoms, signs, and laboratory findings" at least equal in severity and duration to all of the criteria for the most similar listed impairment. Tackett, 180 F.3d at 1099-1100 (quoting 20 C.F.R. 404.1526); see Sullivan, 493 U.S. at 531.

The ALJ found that since March 1, 2011, plaintiff's alleged onset date, her impairments did not meet

or equal a listed impairment, either singly or combination. [AR 12]. Plaintiff contends that it is "very likely that the combination of her hypertension and coronary artery disease equals listing 4.04(C)." [1] She also contends that her symptoms cause "serious interference with her activities of daily living," as required under listing section 4.04(C)(2). Plaintiff argues that if the ALJ had any doubt as to whether the listing was met or equaled, he had a duty to develop the record further.

Plaintiff bears the burden of proving that she or he has an impairment that meets or equals the criteria of a listed impairment. Burch, 400 F.3d at 683. "An ALJ is not required to discuss the combined effects of a claimant's impairments or compare them to any listing in an equivalency determination, unless the claimant presents evidence in an effort to establish equivalence. Burch, 400 F.3d at 683 (citing Lewis v. Apfel, 236 F.3d 503, 514 (9th Cir. 2001)).

During the hearing, plaintiff's counsel did not argue that her impairments met or equaled a listing. In this action, plaintiff argues that the angiography reports support an inference that she still has at least a 50% narrowing in her left anterior descending coronary artery, so "part of listing 4.04(C)(1)(d) is met." Listing 4.04(C)(1)(d) requires, however, that there be 50% or more narrowing in "at least two nonbypassed

---

[1] Listing section 4.04(C) requires

> Coronary artery disease, demonstrated by angiography (obtained independent of Social Security disability evaluation) or other appropriate medically acceptable imaging, and in the absence of a timely exercise tolerance test or a timely normal drug-induced stress test, an MC, preferably one experienced in the care of patients with cardiovascular disease, has concluded that performance of exercise tolerance testing would present a significant risk to the individual, with both 1 and 2:
>
> 1. Angiographic evidence showing:
> a. 50 percent or more narrowing of a nonbypassed left main coronary artery; or
> b. 70 percent or more narrowing of another nonbypassed coronary artery; or
> c. 50 percent or more narrowing involving a long (greater than 1 cm) segment of a nonbypassed coronary artery; or
> d. 50 percent or more narrowing of at least two nonbypassed coronary arteries; or
> e. 70 percent or more narrowing of a bypass graft vessel; and
>
> 2. Resulting in very serious limitations in the ability to independently initiate, sustain, or complete activities of daily living.

20 C.F.R. Pt. 404, Subpt. P, App. 1.

coronary arteries[.]" Plaintiff does not explain how she meets or equals the requirement of a second artery with 50% or more narrowing. Thus, even accepting at face value plaintiff's argument that her impairments meet or equal *part* of listing section 4.04, she has not met her burden "to present medical findings equal in severity to *all* the criteria for the one most similar listed impairment." Sullivan, 493 U.S. at 531; see Tackett, 180 F.3d at 1100 ( "'Medical equivalence must be based on medical findings.' A generalized assertion of functional problems is not enough to establish disability at step three.") (citing 20 C.F.R. § 404.1526). Therefore, plaintiff's contention regarding the ALJ's step three finding lacks merit.

**Credibility finding**

Plaintiff contends that the ALJ failed to articulate legally sufficient reasons supporting his negative credibility finding.

Plaintiff testified as follows during administrative hearings conducted in July 2012 and January 2013. She was represented by counsel during the second hearing, but not during the first. [See AR 14, 26-64].

She stopped working in 2010. She has congestive heart failure, "uncontrollable hypertension" for which she had been hospitalized, chest pain, difficulty breathing, pain and swelling in her legs and knees, hypertension, and glaucoma in both eyes that has left her with almost no vision in right eye. She could sit or stand for about an hour at a time before needing to alternate positions. Sometimes the swelling in her legs persisted even after she stood up and moved around. Her knees ached and cramped, and she lost her balance a lot.

Plaintiff had a heart attack in 2006 and had a stent inserted at that time. A second stent was inserted in 2011. She takes nitroglycerin for chest pain six or seven time per month; each time, she takes about three nitroglycerin pills because she is supposed to take a pill every 15 minutes if the pain persists. She cannot see anything but darkness with her right eye, and her vision in her left eye is blurry. She cannot see well and cannot read with just her glasses but can read using a magnifying glass. She underwent laser surgery "to stop the glaucoma from progressing" but there was nothing she could do to improve her vision, which had gotten worse during the past three to four years and had been in its current condition for a year to 18 months. She takes medication for her heart and blood pressure. Her medications make her drowsy and sleepy, so she sleeps three to four hours during the day and three to four hours during the night. She is able

to take care of her personal hygiene, including bathing and dressing, but has trouble cooking and cleaning due to fatigue. She "can't do anything" because she is "constantly in pain." [AR 35]. She had been told her blood sugar was high and she was borderline diabetic, but she had not received a diagnosis of diabetes. In 2011, after the second stent was inserted, she had blood transfusion due to anemia.

Once a disability claimant produces evidence of an underlying physical or mental impairment that could reasonably be expected to produce the pain or other subjective symptoms alleged, the adjudicator is required to consider all subjective testimony as to the severity of the symptoms. Moisa v. Barnhart, 367 F.3d 882, 885 (9th Cir. 2004); Bunnell v. Sullivan, 947 F.2d 341, 345 (9th Cir. 1991) (en banc); see also C.F.R. §§ 404.1529(a), 416.929(a) (explaining how pain and other symptoms are evaluated). Absent affirmative evidence of malingering, the ALJ must then provide specific, clear and convincing reasons for rejecting a claimant's subjective complaints. Vasquez v. Astrue, 547 F.3d 1101, 1105 (9th Cir. 2008); Carmickle v. Comm'r, Soc. Sec. Admin., 533 F.3d 1155, 1160-1161 (9th Cir. 2008); Moisa, 367 F.3d at 885. The ALJ's credibility findings "must be sufficiently specific to allow a reviewing court to conclude the ALJ rejected the claimant's testimony on permissible grounds and did not arbitrarily discredit the claimant's testimony." Moisa, 367 F.3d at 885. However, if the ALJ's assessment of the claimant's testimony is reasonable and is supported by substantial evidence, it is not the court's role to "second-guess" it. Rollins v. Massanari, 261 F.3d 853, 857 (9th Cir. 2001).

In evaluating subjective symptom testimony, the ALJ must consider "all of the evidence presented," including the following factors: (1) the claimant's daily activities; (2) the location, duration, frequency, and intensity of pain and other symptoms; (3) precipitating and aggravating factors, such as movement, activity, and environmental conditions; (4) the type, dosage, effectiveness, and adverse side effects of any pain medication; (5) treatment, other than medication, for relief of pain or other symptoms; (6) any other measures used by the claimant to relieve pain or other symptoms. See 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3); see also Social Security Ruling ("SSR") 96-7p, 1996 WL 374186, at *3 (clarifying the Commissioner's policy regarding the evaluation of pain and other symptoms). The ALJ also may employ "ordinary techniques of credibility evaluation," considering such factors as: (8) the claimant's reputation for truthfulness; (9) inconsistencies within the claimant's testimony, or between the claimant's testimony and the claimant's conduct; (10) a lack of candor by the claimant regarding matters other than the claimant's

subjective symptoms; (11) the claimant's work record; and (12) information from physicians, relatives, or friends concerning the nature, severity, and effect of the claimant's symptoms. See Light v. Soc. Sec. Admin., 119 F.3d 789, 792 (9th Cir. 1997); Fair v. Bowen, 885 F.2d 597, 604 n.5 (9th Cir. 1989).

The ALJ found that plaintiff had severe impairments consisting of coronary artery disease, status post myocardial infarction, status post stent placement, very poor vision in the claimant's right eye, hypertension, and headaches. [AR 12]. The ALJ determined that plaintiff could lift or carry no more than 10 pounds occasionally and frequently; stand or walk for six hours out of an eight-hour workday with regular breaks; sit for six hours out of an eight-hour workday with regular breaks; occasionally climb, balance, stoop, kneel, crouch, and crawl, but not climb ladders, ropes, or scaffolds; and use monocular vision only, with no work requiring very fine vision (but she can read newsprint). Plaintiff could not drive, be exposed to hazardous machinery and unprotected heights, or perform fast- paced work, such as using a conveyor belt. [AR 13].

Since there was "no evidence of malingering, the ALJ could "reject [plaintiff's] testimony about the severity of her symptoms only by offering specific, clear and convincing reasons for doing so." Lingenfelter v Astrue, 504 F.3d 1028, 1036 (9th. Cir. 2007). The ALJ's reasons for finding that plaintiff's testimony was less than fully credible do not meet that legal standard.

First, the ALJ noted that plaintiff testified that she can

> maintain her . . . personal hygiene and bathe herself. The claimant has described daily activities that are not limited to the extent one would expect, given the complaints of disabling symptoms and limitations. Some of the physical and mental abilities and social interactions required in order to perform these activities are the same as those necessary for obtaining and maintaining employment. . . . [Plaintiff's] ability to participate in such activities diminishes the credibility of [her] allegations of functional limitations

[AR 14].

An ALJ may consider "whether the claimant engages in daily activities inconsistent with the alleged symptoms," and whether "the claimant reports participation in everyday activities indicating capacities that are transferable to a work setting," and "[e]ven where those activities suggest some difficulty functioning, they may be grounds for discrediting the claimant's testimony to the extent that they contradict claims of

a totally debilitating impairment." Molina v. Astrue, 674 F.3d 1104, 1112-1113 (9th Cir. 2012). Here, however, the ALJ pointed to only two of plaintiff's daily activities, caring for her personal hygiene and bathing herself. Those activities are not inconsistent with her alleged symptoms, are not transferable to a work setting, and provide no basis for discrediting her subjective symptom testimony. Plaintiff also testified that her fatigue made it difficult to cook or clean, that she napped three to four hours a day, and that she did not do much else due to constant pain. Plaintiff's testimony regarding her daily activities does not constitute a specific, clear, and convincing reason for finding her subjective complaints less than fully credible. See Garrison v. Colvin, 759 F.3d 995, 1015-1016 (9th Cir. July 14, 2014) (noting that "[w]e have repeatedly warned that ALJs must be especially cautious in concluding that daily activities are inconsistent with testimony about pain, because impairments that would unquestionably preclude work and all the pressures of a workplace environment will often be consistent with doing more than merely resting in bed all day," and holding that the ALJ erred in concluding that the plaintiff's reported daily activities, which "included talking on the phone, preparing meals, cleaning her room, and helping to care for her daughter," were inconsistent with her pain complaints).

The ALJ concluded that the objective medical evidence did not corroborate plaintiff's subjective complaints, but even the ALJ's rather abbreviated summary of the evidence reveals that the medical evidence is consistent in material respects with her testimony. The ALJ noted that plaintiff's medical records showed that plaintiff was hospitalized for 10 days in 2011 for "hypertensive crisis and encephalopathy" after reporting severe headaches. The records noted that plaintiff had a history of coronary artery disease with stent placement on two occasions in the past. Plaintiff was diagnosed with pneumonia, hypertension, anemia, hyperlipidemia, coronary artery disease (status post myocardial infarction status post stent placement), glaucoma, proteinuria, and tension headaches. [AR 14]. That history and those diagnoses are consistent with plaintiff's testimony. A November 2011 EMG of plaintiff's lower extremities was suggestive of distal sensory neuropathy. [AR 14]. X-rays of plaintiff's left shoulder, cervical spine, and right shoulder were negative, but since plaintiff did not testify to back or shoulder pain, those x-rays do not diminish her credibility. [AR 14]. Plaintiff was hospitalized again in March 2012 after presenting to the emergency room for complaints of chest pain and headaches; she was found to be "severely hypertensive." [AR 15, 526]. The attending physician wrote that plaintiff had "been here multiple times" since he

"initially met her in February 2011." [AR 526]. She had a "longstanding history of hypertension [and] coronary artery disease" and was on multiple medications, including Lopressor, clonidine, spironolactone, and furosemide. Plaintiff's blood pressure was "poorly controlled on the outside but fairly well controlled in the hospital." [AR 15, 523]. Based on a recent "extensive cardiac workup" plaintiff had undergone and her hospital laboratory results, a new episode of myocardial infarction was ruled out. [See AR 15, 523]. Plaintiff had run out of her medications and was noted to have "a history of noncompliance with medications including her dual anti-platelet therapy[2] and more importantly her hypertension medications due to insurance purposes and financial difficulties." [AR 526 ]. She was discharged on several medications and a low-sodium diet. Her diagnoses on discharge were: (1) "Atypical chest pain, likely hypertensive heart"; (2) "Hypertension, poorly controlled likely secondary to medication noncompliance due to financial affordability issues"; (3) Coronary artery disease, stable; (4) Dyslipedemia; and (5) Gastroesophageal reflux disease. [AR 527-528].

The objective medical evidence cited by the ALJ is consistent with plaintiff's testimony regarding her diagnoses and treatment for multiple medical conditions including uncontrolled hypertension, a history of myocardial infarction and stent placement, coronary artery disease, and glaucoma. The ALJ characterized plaintiff's treatment on discharge from the hospital in March 2012 as "conservative" because she was discharged only on medications (12 in all). [See AR 15, 527]. Plaintiff's treatment as a whole, however, was far from conservative. She had undergone cardiac catheterization and angiography, two surgical stent placements, multiple hospitalizations due to symptoms of her alleged impairments both immediately before and after her alleged onset date of March 1, 2011 (February 2011, March 2011, July 2011, December 2011, and March 2012), dual anti-platelet therapy, right temporal artery biopsy, "extensive cardiac workup," and surgery for glaucoma, along with the medications that plaintiff's treating physicians noted she had trouble obtaining for financial reasons. [See AR 258-449, 503-590]. Therefore, plaintiff's treatment history did not provide a specific, clear, and convincing reason for rejecting the alleged severity of her impairments.

---

[2] Dual antiplatelet therapy is the administration of a combination of aspirin and a second anti-clotting medication to reduce the risk of blood clots to protect patients from stent thrombosis and major adverse cardiovascular and cerebrovascular events following the implantation of stents that are coated with medication. See DAPT Study, About, available at http://www.daptstudy.org/ (last visited Nov. 12, 2015).

The only other reason that can be discerned from the ALJ's decision for his adverse credibility finding is that no medical source statement in the record "suggests functional limitations more restrictive than" the ALJ's RFC finding. [AR 15]. In assessing a claimant's credibility, the ALJ may consider medical opinions "concerning the nature, severity, and effect of the symptoms of which [the claimant] complains." Light, 119 F.3d at 792. In this case, however, the examining and nonexamining source opinions on which the ALJ relied do not constitute clear and convincing reasons for plaintiff's subjective symptoms. First, only one of those physicians, consultative examiner Robin Alleyne, M.D., could have seen plaintiff's complete medical records, including those from her March 2012 hospitalization (and it is not clear from the examination report that those records in fact were among the records Dr. Alleyne reviewed). [See AR 491-501]. The other examining and nonexamining source opinions were rendered between June 2011 and November 2011. [See AR 65-86, 89-108, 441-449]. Second, the ALJ himself concluded that the examining and nonexamining source opinions did not adequately account for plaintiff's subjective symptoms. The ALJ expressly rejected Dr. Alleyne's opinion because it "does not take into account the [claimant's] subjective complaints and . . . it is also inconsistent with the medical records as a whole." [AR 16]. The ALJ also concluded that plaintiff's subjective allegations were sufficiently credible that they warranted a more restrictive RFC than assessed by either the examining or nonexamining source opinions. [AR 15]. The problem is that the ALJ's RFC finding was not sufficiently restrictive given his failure to articulate legally sufficient reasons for partially rejecting her subjective symptom testimony.

**Remedy**

Three requirements must be met before a court may remand a case to the Commissioner with instructions to award benefits:

> (1) the record has been fully developed and further administrative proceedings would serve no useful purpose; (2) the ALJ has failed to provide legally sufficient reasons for rejecting evidence, whether claimant testimony or medical opinion; and (3) if the improperly discredited evidence were credited as true, the ALJ would be required to find the claimant disabled on remand. Even if those requirements are met, though, [courts] retain flexibility in determining the appropriate remedy. In particular, we may remand on an open record for further proceedings when the record as a whole creates serious doubt as to whether the

claimant is, in fact, disabled within the meaning of the Social Security Act.

Burrell v. Colvin, 775 F.3d 1133, 1141 (9th Cir. 2014) (internal quotation marks and citations omitted).

The requirements for remanding this case for a determination of disability and an immediate award of benefits for the period March 1, 2011 through January 12, 2013 are met. The record has been fully developed in this case, in that there is no contention that treating source records or other material evidence is missing. The ALJ failed to provide legally sufficient reasons for rejecting plaintiff's subjective testimony. If that testimony is credited as true, plaintiff would not be able to perform even the limited range of sedentary work described by the ALJ. Among other things, she would need to nap three to four hours during the day, could only read using a magnifying glass, could sit no more than four hours per day, stand or walk no more than four hours a day, and would need to alternate between sitting and standing every hour. [See AR 28-64].

The record as a whole does not "create[]serious doubt as to whether [plaintiff] is, in fact, disabled," and defendant has not "point[ed] to anything in the record that the ALJ overlooked and explain how that evidence casts into serious doubt [plaintiff's] claim to be disabled[.]" Burrell, 775 F.3d at 1141 (citing Garrison v. Colvin,, 759 F.3d 9995, 1022 ( 9th Cir. 2014)). Therefore, a remand for further administrative proceedings would serve no useful purpose.[3]

## Conclusion

For the reasons described above, the Commissioner's decision is not based on substantial evidence and is not free of legal error. The Commissioner's decision is **reversed,** and this case is **remanded to the Commissioner for the calculation and award of benefits** with respect to the period between March 1, 2011 and January 16, 2013.

**IT IS SO ORDERED**

November 17, 2015

ANDREW J. WISTRICH
United States Magistrate Judge

[3] This disposition makes it unnecessary to consider the additional issue plaintiff raised.